UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:

REZA KHATIBI,

        Plaintiff,

vs.

LINDA M. WERLEIN, individually and
d/b/a EURO PROS K-9 CENTER,

        Defendant.
_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, REZA KHATIBI (hereinafter "Plaintiff"), brings this action for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, 1594-95 ("TVPA"); Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq.*; and Florida common law, against LINDA M. WERLEIN, individually and doing business as EURO PROS K-9 CENTER (hereinafter "Defendant"), and alleges as follows:

### PARTIES

1. Plaintiff Reza Khatibi was employed by Defendant from approximately January 2019 to January 2020. He worked out of Defendant's dog training and boarding facility, where Defendant Werlein also maintained her personal residence, at 35571 SR 70 East, Myakka City, Florida 34251.

1

2. Defendant Linda M. Werlein is an individual who, at all times material hereto, resided at 35571 SR 70 East, Myakka City, Florida 34251.

3. Defendant Werlein is also the sole proprietor of a dog training and boarding company named "Euro Pros K-9 Center," (hereinafter "Euro Pros") which has a principal place of business at 35571 SR 70 East, Myakka City, Florida 34251.

4. At all times material hereto, Defendant exerted control over Euro Pros' employees, pay practices and policies. She was involved in the day-to-day operations of the business and maintained direct responsibility for the supervision of Plaintiff.

## JURISDICTIONAL ALLEGATIONS

5. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, because this action involves federal questions under the FLSA, TVPA, and Title VII of the Civil Rights Act.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as the state law claims are related to Plaintiff's federal claims and arise from the same case or controversy as Plaintiff's FLSA, TVPA and Title VII claims.

7. This Court has original and personal jurisdiction over this action because Defendant is engaged in business within the State of Florida, and the action complained of occurred in Florida.

8. Venue is proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) and the Local Rule for the United States District Court, Middle District of Florida 1.02(c) because the events giving rise to these claims occurred in this jurisdiction and Defendant conducts business in this jurisdiction.

## FLSA COVERAGE

9. At all times material hereto, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

10. At all times material hereto, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(r) and 203(s) of the FLSA because it has had employees engaged in commerce.

11. Furthermore, at all times material hereto, Defendant had, and continues to have, an annual gross business volume in excess of the statutory standard.

12. At all times material hereto, Defendant exerted control over Euro Pros' employees, pay practices and policies. She was involved in the day-to-day operations of Euro Pros' business and maintained direct responsibility for the supervision of Plaintiff.

13. At all times material hereto, Plaintiff was an employee of Defendant, who was engaged in commerce or in the production of goods for commerce as required by 29

3

U.S.C. § 206-207. For example, employees employed by Defendant utilized training devices, tools and materials that were purchased from outside of Florida and moved in interstate commerce. Further, employees employed by Defendant provided services to customers who resided both inside and outside of Florida.

14. Plaintiff's duties as an employee of Defendant consisted of training dogs and participating in directing the other dog trainers. Plaintiff used and utilized training devices, tools and materials that were purchased from outside of Florida and moved in interstate commerce, and trained dogs belonging to customers who resided both inside and outside of Florida. Accordingly, Plaintiff was involved in interstate commerce.

## GENERAL ALLEGATIONS

15. Plaintiff was originally born in Afghanistan. As a young child, his family moved to Germany, and he became a German citizen. He lived in Germany until 2018.

16. In 2012, while living in Germany, Plaintiff started a dog training and breeding company. He was licensed in Germany both as a nationally recognized dog breeder and animal specialist.

17. In 2018, Plaintiff immigrated to the United States and was given a K-1 visa. He married in the U.S., and during the course of his marriage, obtained a green card.

18. At some point after receiving his green card, Plaintiff and his wife divorced.

Having no place to live, and being the owner of several dogs, Plaintiff began living at a local animal shelter.

19. Hearing about Plaintiff's situation, Defendant coerced Plaintiff to join her dog training operation by promising him that if he complied, she would assist him in gaining United States citizenship and give him a place to live.

20. Plaintiff was hired by Defendant on or about January 1, 2019.

21. At the time of Plaintiff's hire, or immediately thereafter, Plaintiff and Defendant entered into a "Contractor Agreement," dated January 1, 2019. This agreement is attached hereto as Exhibit "A."

22. Under the terms of the agreement, Plaintiff would work for free for a term of four months, in exchange for "an educational opportunity and possible certification in Euro Pros' various training programs." (*See* Exhibit A, pg. 3). Further, the agreement contained non-compete language that enjoined Plaintiff from working "in any canine related boarding and/or training capacity" within 100 miles of Defendant's business for a period of three (3) years. In exchange for Plaintiff's work and promise not to compete, he received only room and board for himself and his dogs.

23. This agreement is nothing more than a pretext for Plaintiff, a homeless immigrant trying to do anything he could to obtain U.S. citizenship, to work for free. Further, at the time this agreement was executed (and throughout Plaintiff's

employment with Defendant), Defendant did not maintain any specific or formal training programs or certifications.

24. In fact, Mr. Khatibi brought a wealth of knowledge to Defendant's operation, gained during his time working as a licensed and certified dog breeder and animal specialist in Germany. Defendant marketed this prior knowledge and skill on their website, and expressly acknowledged his expertise in the area, and advertised it to future and existing customers.

25. Mr. Khatibi was forced to work, on average, eighty (80) hours per week. The large majority of his time was spent training dogs and tending to the dogs who were being boarded at Defendant's facility. His other duties included cleaning kennels, walking the dogs, feeding the dogs, and general clean-up around the dog training and boarding areas.

26. Throughout his employment, Ms. Werlein controlled all aspects of managing the business, including, but not limited to, handling all income, advertising and marketing, paying employees, purchasing materials to be used for the business, setting and adjusting employees' rates of pay and hours of work, directing the work of employees, maintaining production and sales records, planning and controlling the budget, and monitoring and implementing legal compliance measures.

27. During his first four months working for Defendant, Mr. Khatibi was forced to sleep in a small shed along with his dogs. He slept on top of the dog kennels. The

shed was not air conditioned or heated. He was also forced to use an outside shower near the shed to bathe himself.

28. When Plaintiff complained about his working or living conditions, Defendant threatened to interfere with and negatively affect his attempts at gaining U.S. citizenship. She threatened him that if he were to lose this job, he would have nothing, would be homeless, and would be deported back to Germany. After Plaintiff spent a night at a friend's house instead of in his assigned shed, Defendant instructed him that he was no longer allowed to sleep anywhere other than on her property.

29. Defendant took possession of Plaintiff's passport and U.S. citizenship documents (i.e., his green card) by keeping them in her house, while forcing him to sleep and live in the shed.

30. After months of working long hours while sleeping in a shed, Plaintiff was presented with an updated agreement. This updated agreement is attached hereto as Exhibit "B."

31. This updated agreement, dated May 1, 2019, provided that Plaintiff would now be placed in a management position, with a starting salary of $36,000.00 per year. (*See* Exhibit B).

32. Despite the language in this agreement, Plaintiff was not paid anything until October 2019.

33. During the entirety of his employment, Plaintiff received approximately two

(2) paychecks.

34. During the entirety of his employment, Plaintiff was paid approximately $7,000.00.

35. During the entirety of Plaintiff's employment with Defendant, Defendant willfully misclassified Plaintiff as an independent contractor, when in fact he was an employee. As stated herein, he worked an average of eighty (80) hours per week. He had no other income or employment. He lived on Defendant's premises (in a shed) and was completely and utterly financially dependent on Defendant.

36. The work performed by Plaintiff was integral to Defendant's business.

37. Defendant maintained control over all aspects of Plaintiff's activities. Specifically, Ms. Werlein supervised Plaintiff and exerted control over his day-to-day activities. She required Plaintiff to adhere to specific schedules, perform specific duties, she assigned Plaintiff the dogs to train and controlled when he trained which dog. Defendant supplied Plaintiff with the tools, equipment, and materials necessary to fulfill his job duties. Conversely, Plaintiff made no significant investments in the tools, equipment, or supplies required to fulfill his job duties.

38. As an employee, Plaintiff was non-exempt from the Fair Labor Standards Act's provisions regarding overtime wages.

39. Defendant intentionally attempted to circumvent laws providing employees with legal protection pursuant to Florida and Federal law.

40. Both contractor agreements signed by Plaintiff (Exhibits "A" and "B") were a sham, utilized by Defendant to disclaim the true relationship with Plaintiff.

41. By willfully and intentionally misclassifying Plaintiff as an independent contractor, Defendant avoided owing Plaintiff overtime wages pursuant to 29 U.S.C. §§ 201-209 of the FLSA, for all hours worked over forty (40) per workweek.

42. Further, Defendant's purpose in misclassifying Plaintiff as an independent contractor, rather than properly classifying him as an employee, was to conceal the fact that Plaintiff worked as a modern-day slave for her dog training and boarding business.

43. Upon information and belief, the records, to the extent they exist, concerning the number of hours and amounts paid to Plaintiff are in the possession, custody and control of Defendant.

44. Upon information and belief, Defendant did not rely on professional legal advice or any Department of Labor opinions when she unlawfully misclassified Plaintiff as a contractor.

45. During Plaintiff's employment, Defendant would accept dogs, both to train and board, who she knew to be dangerous and that she knew had previously bitten other people. On two (2) occasions, she required Plaintiff to train dogs that she knew had bitten people in the past. On both occasions, the dogs bit Plaintiff, causing him to be treated at local hospitals on an emergency basis.

46. The second occasion resulted in significant trauma and permanent structural damage to Plaintiff's hand. As a result of these injuries, Plaintiff will suffer from a lack of strength and mobility in his hand for the rest of his life.

47. Plaintiff also sustained an injury to his spine in the course and scope of his employment. Specifically, while training a customer's dog, the dog jumped at Plaintiff and caused him to fall. The fall caused Plaintiff to sustain a spinal injury, including herniated discs.

48. Both dog bites sustained by Plaintiff arose out of work performed by Plaintiff for the benefit of the Defendant.

49. The back injury sustained by Plaintiff arose out of work performed by Plaintiff for the benefit of the Defendant.

50. Both dog bites sustained by Plaintiff took place within the course and scope of his employment with Defendant.

51. The back injury sustained by Plaintiff occurred while Plaintiff was acting within the course and scope of his employment with Defendant.

52. Plaintiff persistently pleaded with Defendant to purchase a bite suit, to adequately protect him from being bitten by dangerous dogs. Defendant never acquiesced to this request.

53. Despite having between six (6) and eight (8) full time employees, Defendant failed to obtain worker's compensation insurance that would have allowed Plaintiff

to file a claim for these injuries.

54. Defendant paid other employees she employed who were not German immigrants or of Afghani descent in accordance with their agreed upon hourly wages. In the case of Plaintiff, she paid him nothing for the first four (4) months of his employment under the guise of his participation in Euro Pros illusory "training programs," and then withheld his contractually agreed upon pay for several more months, before only paying him *de minimus* sums of money prior to his termination.

55. Plaintiff is a member of a protected class, both as a German immigrant and as a person of Afghani descent.

56. Plaintiff was subjected to the adverse employment action of having his pay withheld for at least ten (10) months while working eighty (80) hours per week for Defendant.

57. As stated above, Defendant treated similarly situated non-class members more favorably than Plaintiff.

58. Defendant intended to discriminate against Plaintiff on the basis of his national origin.

59. As stated herein, Plaintiff was well qualified to perform his job with Defendant.

60. Plaintiff has hired the undersigned law firm and agreed to pay them a fee.

61. All conditions precedent to filing this action have been satisfied or waived.

Specifically, Plaintiff was issued a Notice of Right to Sue by the Equal Employment Opportunity Commission on February 8, 2021. That notice is attached hereto as Exhibit "C."

### COUNT I: VIOLATON OF THE TRAFFICKING VICTIMS PROTECTION ACT

62. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-58 above into this Count, as if set out fully and completely herein.

63. The Trafficking Victims Protection Act ("TVPA") was "intended to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery." *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1278 (11th Cir. 2020), *quoting* H.R. Rep. No. 106-939, at 101 (2000) (Conf. Rep.).

64. Defendant knowingly obtained the labor of Plaintiff by means of abuse or threatened abuse of law or legal process, specifically by threatening to interfere with and negatively impact Plaintiff's citizenship status if he did not continue to work under her employ.

65. Defendant knowingly obtained the labor of Plaintiff by a scheme or plan intended to cause Plaintiff to believe that if he did not perform the labor she required, she would cause him serious harm, including deportation, emotional distress, and homelessness.

66. Further, Defendant's scheme or plan to obtain the labor of Plaintiff included taking possession of his passport and green card, in violation of 18 U.S.C. § 1592.

12

67. As a result of Defendant's actions, Plaintiff has suffered damages, including lost and unpaid wages, emotional distress, loss of the capacity for the enjoyment of life, medical bills and costs, and attorney's fees and costs incurred in bringing this action.

68. Due to the outrageous and criminal nature of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages.

**COUNT II: RECOVERY OF UNPAID OVERTIME COMPENSATION**

69. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-58 above into this Count, as if set out fully and completely herein.

70. Plaintiff was an employee of Defendant pursuant to the FLSA.

71. Plaintiff performed non-exempt job duties.

72. Defendant was aware Plaintiff was performing non-exempt job duties.

73. Plaintiff was entitled to be paid time and one-half his regular rate of pay for each hour worked in excess of forty (40) per workweek.

74. During his employment with Defendant, Plaintiff regularly worked overtime hours but was not paid time and one-half compensation for same.

75. As a result of Defendant's intentional, willful, and unlawful acts in refusing to pay Plaintiff time and one-half his regular rate of pay for each hour worked in excess of forty (40) per workweek in one or more workweeks, Plaintiff has suffered damages and is incurring reasonable attorneys' fees and costs.

76. Defendant was aware that Plaintiff performed non-exempt job duties but still refused to pay Plaintiff overtime for hours worked over forty (40).

77. Defendant did not maintain and keep accurate time records as required by the FLSA for Plaintiff.

78. Defendant failed to post required informational FLSA informational listings as required by the FLSA.

79. Defendant's conduct was in reckless disregard of the overtime requirements of the FLSA.

80. Defendant willfully violated the FLSA.

81. Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies.

82. Plaintiff is entitled to liquidated damages.

## COUNT III: RECOVERY OF UNPAID MINIMUM WAGES

83. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-58 above into this Count, as if set out fully and completely herein.

84. Defendant engaged in a pattern, policy and practice of violating the FLSA, as detailed in this Complaint.

85. At all relevant times, Defendant was an employer engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA.

86. At all relevant times, Defendant employed employees, including Plaintiff.

87. Defendant was required to pay directly to Plaintiff the applicable minimum wages to which he was entitled under the FLSA.

88. Defendant failed to pay Plaintiff the minimum wages he was entitled under the FLSA.

89. Defendant's unlawful conduct, as described in this Complaint, was willful and intentional. Defendant was aware or should have been aware that the practices described in this Complaint were unlawful. Defendant did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

90. Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies.

91. As a result of Defendant's willful violations of the FLSA, Plaintiff has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation.

**COUNT IV: UNPAID WAGES UNDER FLORIDA COMMON LAW**

92. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-58 above into this Count, as if set out fully and completely herein.

93. Plaintiff worked for Defendant during the statutory period.

94. Defendant agreed to pay Plaintiff for his services.

95. Defendant failed to compensate Plaintiff for all wages owed for the work performed.

96. As a result of Defendant's actions, Plaintiff has suffered damages, including lost wages, attorneys' fees, and costs incurred in bringing this action.

### COUNT V: BREACH OF CONTRACT

97. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-58 above into this Count, as if set out fully and completely herein.

98. A valid and enforceable contract existed between Plaintiff and Defendant (*see* Exhibit "B" attached hereto).

99. On May 1, 2019, Defendant offered Plaintiff $36,000.00 per year in exchange for Plaintiff's work as a dog trainer.

100. On that date, Plaintiff accepted Defendant's offer, and continued to work in that capacity until January 1, 2020.

101. Adequate consideration existed between the parties.

102. Defendant materially breached the contract by failing to pay Plaintiff all money owed, pursuant to the terms of the contract.

103. As a result of Defendant's material breach of the contract, Plaintiff has suffered damages, including compensatory damages, and all other damages naturally flowing from the breach and contemplated by the parties at the time of contract

formation.

**COUNT VI: PERSONAL INJURY CLAIM PURSUANT TO F.S. § 440.06**

104. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-58 above into this Count, as if set out fully and completely herein.

105. As detailed above, Plaintiff suffered three (3) separate and distinct injuries while in Defendant's employ. Two (2) of those injuries were to Plaintiff's arm and hand and resulted from dog bites. The other injury was a back/spine injury.

106. All three injuries arose out of work performed by Plaintiff for the benefit of Defendant.

107. All three injuries occurred while Plaintiff was acting within the course and scope of his employment with Defendant.

108. At the time of the injuries described above, Defendant failed obtain or maintain worker's compensation insurance, robbing Plaintiff of his ability to file a claim for worker's compensation benefits.

109. At the time of the injuries, and during Plaintiff's employment with Defendant, Defendant was required to carry worker's compensation insurance, pursuant to Florida Statute § 440.03.

110. Due to Defendant's failure to carry such insurance coverage, and pursuant to Florida Statute § 440.06, Plaintiff files this claim for personal injury damages directly against Defendant. Pursuant to the statute, Defendant may not

defend against this Count on grounds that the injury was caused by the negligence of a fellow servant, that Plaintiff assumed the risk of his employment, or that the injury was due to the comparative negligence of Plaintiff.

111. As a direct and proximate result of the injuries sustained by Plaintiff while in the course and scope of his employment, Plaintiff has suffered damages, including bodily injury, resultant pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization and medical treatment, loss of earnings, loss of ability to earn money, and permanent disfigurement and scarring. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

## COUNT VII: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

112. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-58 above into this Count, as if set out fully and completely herein.

113. Plaintiff was a member of protected classes, both as a German immigrant and as an individual of Afghani descent.

114. Plaintiff was subjected to the adverse employment actions of having his pay withheld for at least ten (10) months, while contemporaneously working an average of eighty (80) hours a week.

115. Defendant did not withhold pay from employees similarly situated to Plaintiff who were not members of the protected classes above.

116. Plaintiff was the only German immigrant and individual of Afghani descent in Defendant's employ throughout his employment.

117. Plaintiff was well qualified for the job, as detailed in this Complaint.

118. Defendant's disparate treatment of Plaintiff was done with a specific discriminatory intent, as detailed throughout this Complaint. Specifically, Defendant took advantage of Plaintiff's immigration status, threatened to interfere with and negatively impact his immigration status on numerous occasions, otherwise schemed and intended to take advantage of Plaintiff based on his national origin.

119. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages, future lost wages, emotional distress, and attorneys' fees and costs incurred in bringing this action.

120. Defendant's conduct, as detailed in this Complaint, was intentional and malicious. Accordingly, Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff hereby demands judgment against Defendant on all counts herein, and further prays that the Court issue an Order awarding Plaintiff the economic damages, non-economic damages, liquidated damages, compensatory damages, punitive damages, and reasonable attorneys' fees and costs Plaintiff has and will incur in bringing this action, along with any and all other relief that the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

DATED this 23rd day of April, 2021, and respectfully submitted by:

/s/ *Nicholas J. Castellano, II*
Nicholas J. Castellano, II, Esq.
Florida Bar Number: 0118601
E-Mail: nick@buckmanandbuckman.com

/s/ *Y. Drake Buckman, II*
Y. Drake Buckman, II, Esq.
Florida Bar Number: 0137634
E-Mail: attorney@buckmanandbuckman.com

**BUCKMAN & BUCKMAN, P.A.**
2023 Constitution Blvd.
Sarasota, FL 34231
Telephone:  (941) 923-7700
Fax:            (941) 923-7736

*Attorneys for Plaintiff, Reza Khatibi*